IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CV RESTORATION, LLC,
       *Plaintiff*,

     v.
                                       Civil Action No. ELH-16-2102

DIVERSIFIED SHAFTS
SOLUTIONS, INC.,
       *Defendant*.

## MEMORANDUM

CV Restoration, LLC ("CVR"), plaintiff, filed suit against defendant, Diversified Shafts Solutions, Inc. ("DSS"), on June 14, 2016. ECF 1. CVR alleges breach of contract, unjust enrichment, and breach of fiduciary duty, arising out of two written agreements that plaintiff alleges the parties executed in August 2009. *Id.* ¶¶ 26-41. Plaintiff seeks to recover, among other things, $338,310 and requests an accounting. *Id* ¶¶ 42-46.

DSS has asserted counterclaims against CVR, alleging breach of contract and requesting an accounting. ECF 15 ¶¶ 66-78. It seeks, *inter alia*, $222,157 in damages, plus attorneys' fees. *Id.* ¶¶ 58, 65.

This Memorandum resolves the motion filed by DSS to transfer the case to the Northern District of Georgia. ECF 13 (the "Motion").[1] The Motion is supported by several exhibits (*id.* at 13-22). CVR opposes the Motion (ECF 20, the "Opposition"), and has submitted exhibits. ECF 20-2, ECF 20-3. DSS replied. ECF 23 (the "Reply").

The Motion has been fully briefed and no hearing is needed to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

---

[1] CVR has filed a motion to dismiss portions of the counterclaim, pursuant to Fed. R. Civ. P 12(b)(6). This Memorandum does not resolve the motion to dismiss.

## I.      Background

CVR is a limited liability company organized under Maryland law, with its principal place of business in Maryland.  ECF 1 ¶ 1.  CVR "develops, manufactures, markets and distributes axles and their related components for all-terrain vehicles . . . ."  *Id.*¶ 3.  DSS is a corporation organized under Georgia law, with its principal place of business in Alpharetta, Georgia.  *Id*. ¶ 2; ECF 15 (Amended Answer), ¶ 2.  DSS oversees the manufacture, marketing, and distribution of axles for all-terrain vehicles, and their related components.  ECF 1 ¶ 4; ECF 15 ¶ 4.

Plaintiff alleges (ECF 1 ¶¶ 6, 13) that on August 31, 2009, CVR and DSS entered into two agreements: "Limited Partnership Agreement for sales of ATV Axles" (*see* ECF 1-2) and "Partnership Agreement for Monster Axles."   *See* ECF 1-3 (collectively, the "Agreements").  According to plaintiff, "[t]he Agreements are substantively identical, and provide that CVR and DSS are forming a partnership for the manufacture and sale of ATV axles."  ECF 1 ¶ 14.  CVR avers that the gross profit from the "venture" was to be split "equally between" CVR and DSS.  *Id.* ¶ 15.  However, plaintiff asserts that "DSS has continually and systemically breached the Agreements" by not remitting its share.  *Id*. ¶ 19.

In the Motion, DSS contends that the Agreements are neither valid nor enforceable.  ECF 13 at 2.  Defendant states, *id.*: "Neither of the Agreements were signed by Plaintiff, and to the extent the Agreements were signed by someone from DSS, that person was not authorized to enter the Agreements on behalf of DSS."  Defendant also contends that, even if the Agreements were valid and enforceable, "DSS has fulfilled its obligations and is actually owed profits from Plaintiff."  ECF 13 at 2.

In its Opposition, CVR claims that representatives of both CVR and DSS executed the Agreements, but that the parties "'crossed wires' sending unilaterally executed Contracts to one another." ECF 20 at 9 (quoting ECF 20-2 ¶ 7, Affidavit of Danniel Walburn, sole member of CVR). Plaintiff also states that the Agreements "memorialize" the parties' oral agreement and that "the agreement was formed orally prior to the execution of the Agreements . . . over the telephone. . . ." ECF 20 at 9-10.

## II. Discussion

DSS has moved to transfer venue to the Northern District of Georgia, pursuant to 28 U.S.C. § 1404(a), claiming "Maryland has no connection with the matter in controversy." ECF 13 at 9. It contends that "all witnesses and relevant documents" are located in Georgia, and that "many of the underlying issues will be governed by Georgia law." *Id.* at 1. CVR disagrees. ECF 20.

## A.

Section 1404(a) states, in pertinent part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." It enables the courts to "prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 [for diversity cases] by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re: Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

Notably, 28 U.S.C. § 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). To that end, it

helps "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Id.* (citation omitted).

In a motion to transfer venue pursuant to § 1404(a), the moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper. *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D. Md. 2014); *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). "In order to carry this burden, the movant should submit, for example, affidavits from witnesses and parties explaining the hardships they would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (citing *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002)). As Judge Blake observed in *Dow*, 232 F. Supp. 2d at 713, where the movant only provides "[m]ere assertions of inconvenience or hardship," it will not adequately have met its burden.

In addressing a motion to transfer under § 1404(a), the district court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see, e.g.*, *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005); *Lynch*, 237 F. Supp. 2d at 617. Other factors include the "local interest in having localized controversies settled at home" and the "appropriateness in having a trial of a diversity case in a forum that is at home with the

state law that must govern the action." *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004).

Ultimately, "[t]he decision whether to transfer is committed to the sound discretion of the trial court." *Mamani*, 547 F. Supp. 2d at 469; *see Volkswagen*, 545 F.3d at 312 ("'There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'"); *see also Plumbing Servs., Inc.*, 791 F.3d at 443; *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

**B.**

Under 28 U.S.C. § 1404(a), the "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue." *Volkswagen*, 545 F.3d at 312 (internal quotations omitted).  In order to satisfy that requirement, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant.  *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

DSS is a Georgia corporation with its principal place of business in Alpharetta, Georgia. ECF 1 ¶ 2.  Alpharetta is within the Northern District of Georgia.  *See* ECF 23 at 2.  Clearly, this suit could have been brought in the Northern District of Georgia, the proposed transferee venue.

**1.  Venue**

Federal jurisdiction in this case is predicated on diversity of citizenship.  ECF 1 ¶ 9. Under 28 U.S.C. § 1391(b), venue for such an action exists in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as
provided in this section, any judicial district in which any defendant is subject
to the court's personal jurisdiction with respect to such action.

Section 1391(c) states:

[A]n entity with the capacity to sue and be sued in its common name under
applicable law, whether or not incorporated, shall be deemed to reside, if a
defendant, in any judicial district in which such defendant is subject to the court's
personal jurisdiction with respect to the civil action in question . . . .

As noted, DSS is a Georgia corporation, with its principal place of business in Alpharetta,

which is in the Northern District of Georgia. ECF 1 ¶ 2.  Thus, venue in the Northern District of

Georgia would be proper.

## 2.  Personal Jurisdiction

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether

personal jurisdiction exists . . . ." *United Techs Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.

2009).  The Fourth Circuit explained in *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*,

995 F.2d 474, 477 (4th Cir. 1993):  "In the first step, we determine whether the long-arm statute

authorizes the exercise of jurisdiction in the circumstances presented. If we answer that

affirmatively, we consider whether the exercise of jurisdiction comports with Fourteenth

Amendment due process standards."  (Internal citations omitted).

DSS maintains that the Georgia Court has personal jurisdiction over DSS.  ECF 13 at 4.

In its Opposition, CVR argues that "this action could not have been brought in [Georgia],

because that court likely lacks personal jurisdiction *over CVR*." ECF 20 at 3 (emphasis added).

CVR states, *id.* at 4: "In its pleadings and the Motion, DSS fails to even allege facts asserting

'continuous and systematic' contacts with the State of Georgia by CVR."  In Reply, DSS asserts:

"Contrary to CVR's assertion, the Northern District of Georgia's personal jurisdiction over CVR

is not at issue in this determination."  ECF 23 at 2.  According to DSS, the relevant inquiry under

§ 1404 is whether the suit "'might have been brought'" in the transferee district in the first place.
*Id.* (quoting *Virginia Innovation Sciences, Inc. v. Samsung Electronics Co., Ltd.*, 928 F. Supp. 2d
863, 868 (E.D. Va. 2013)).

Courts undertake the personal jurisdiction inquiry to protect the constitutional right of
*defendants.  See, e.g.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011); *Int'l Shoe
Co. v. State of Wash.*, 326 U.S. 310, 317 (1945).  "'Section 1404(a) directs the attention of the
judge who is considering a transfer to the situation which existed when suit was instituted.'"
*Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (quoting *Paramount Pictures, Inc. v. Rodney*, 186
F.2d 111, 119 (3d Cir. 1950) (Hastie and McLaughlin, J.J., dissenting)).  Because CVR is the
plaintiff, the question is not whether the Georgia court would have personal jurisdiction over
CVR.  Rather, the question is whether it would have personal jurisdiction over DSS.

The answer is clearly yes.  As indicated, DSS is organized under the laws of Georgia and
has its principal place of business in Georgia.  *See Goodyear Dunlop Tires Operations, S.A. v.
Brown*, 564 U.S. 915, 924 (stating that corporations are subject to "general jurisdiction" in places
where they are "fairly regarded as at home").  That DSS may not have been able to initiate suit
against CVR in Georgia is of no consequence in the context of the Motion.

## C.

Having determined that this case could have been brought in the Northern District of
Georgia, the Court must weigh several factors in considering the motion to transfer under
§ 1404(a).  These include, as stated: (1) the weight accorded to plaintiff's choice of venue; (2)
witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.
*Plumbing Servs., Inc.*, 791 F.3d at 444.

According to DSS, "the convenience and justice factors show that a transfer to [the] Northern District of Georgia would be the most fair, efficient and inexpensive option" for the resolution of this suit. ECF 13 at 11. CVR counters, ECF 20 at 5:

> Balancing the case-specific factors does not strongly favor transfer, but instead strongly favors leaving the case in this district. DSS has demonstrated, at most, that transfer will be more convenient for it, and less convenient for CVR. This, of course, is insufficient and actually confirms that the case should remain in Maryland.

### 1.  Plaintiff's Choice of Venue

Generally, "a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)); *see also, e.g.*, *Arabian v. Bowen*, 966 F.2d 1441 at *1 (4th Cir. 1992) (per curiam) (table).  Unless the balance of factors points "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *see Gilbert*, 32 F. Supp. 3d at 607; *Mamani*, 547 F. Supp. 2d. at 469.  This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)); *see also, e.g.*, *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (Plaintiff's choice of venue should be afforded substantial deference where "plaintiff has filed suit in his home state"); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013) ("Because plaintiff . . . has chosen its home forum in which to litigate, its choice is particularly deserving of deference.").  However, "a court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'" *Mamani*, 547 F. Supp. 2d at 473 (quoting

*Dicken v. United States*, 862 F. Supp. 91, 93 (D. Md. 1994)); *accord Lynch*, 237 F. Supp. 2d at 617.

DSS argues that CVR's choice of venue should not be afforded weight, stating, ECF 13 at 8: "To the extent that Plaintiff contends DSS breached the contract, such a breach would have had to occur in Georgia." DSS adds that "the Agreements do not contemplate any activity taking place in Maryland." *Id*. at 9. In this regard, DSS points out that the products were designed in Georgia, manufactured and stored in China, and then shipped to DSS's warehouse in Georgia. *Id*. at 8. Thus, DSS concludes that Maryland has "no connection with the matter in controversy." *Id.* at 9.

CVR counters that its choice of venue in Maryland should be afforded "substantial deference" because "[t]here is ample connection to Maryland . . . ." ECF 20 at 6. According to CVR, "Plaintiff is headquartered in Maryland, all of its employees are located here, . . . many of the witnesses are here [and] CVR executed the Agreements here." *Id*. Relying on the Affidavit of Walburn (ECF 20-2), plaintiff also asserts that the "axles were inspected and tested at a facility in Jessup, Maryland. . . ." *Id.* at 11. In addition, plaintiff notes that "field testing of the axles took place in various locations in the State of Maryland, but not outside the State of Maryland." *Id.*

Defendant disputes the existence of enforceable, written contracts.[2] However, it claims, alternatively, that the last act of execution would have occurred in Georgia. *See* ECF 13 at 6. Plaintiff disputes that contention. ECF 20 at 9. To the extent the parties engaged in negotiations and reached an oral agreement, it seems that relevant events occurred in both states. In any event, it does not seem that relevant facts occurred predominantly in either Maryland or Georgia.

---

[2] Although DSS disputes the validity and enforceability of the Agreements, it has assumed their validity for purposes of the Motion. ECF 13 at 6 n.1.

Given that CVR is a Maryland corporation, it chose to file suit in Maryland.  ECF 1 ¶ 1. Plaintiff's choice of venue is entitled to deference.  Therefore, this factor weighs against transfer.

## 2.  Convenience of Witnesses

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses."  *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000); *accord Mamani*, 547 F. Supp. 2d at 473; *see also* 15 C. WRIGHT & A. MILLER, FED. PRACTICE & PROCEDURE, JURISDICTION AND RELATED MATTERS, § 3851 (4th ed.) ("Wright & Miller") at 253 ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a).").   However, "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial."  15 Wright & Miller § 3851 p. 278.

DSS argues, ECF 13 at 9: "The convenience and access for witnesses will be best served by the transfer of this lawsuit to the Northern District of Georgia."  According to DSS, its "key witnesses are located in Georgia."  *Id*.  DSS identifies two witnesses who reside in Georgia.  *Id.* at 9-10.  They are Zheng Ping Wang, who is DSS's majority shareholder and Chair of the Board of Directors, and George King, who is DSS's Chief Financial Officer, Chief Executive Officer, a member of DSS's Board of Directors, and a shareholder.  *Id.*; *see also id.* at 13-14 ("Exhibit 'A'"), 18-19 ("Exhibit 'B'").  DSS explains, ECF 13 at 10: "Both Ms. Wang and Mr. King are critical witnesses for DSS' defense, and it is unduly burdensome, inconvenient, and prohibitively expensive to expect them to travel to Maryland to defend this case."  Further, DSS states that it would be unfairly inconvenienced if it were required to transport to Maryland documents necessary to defend the suit.  *Id*. at 10-11.

As CVR observes, both Wang and King are employees of DSS, thereby diminishing the significance of any inconvenience to them.  ECF 20 at 6.  CVR also claims that it plans to call "at least two independent, non-party witnesses in support of its case, neither of whom is an employee, agent or representative of CVR," and both of whom reside in Maryland.  *Id.*  They are Virgil Poplin, who lives in Savage, Maryland, and Craig Bonner, who lives in Mechanicsville, Maryland.  ECF 20 at 6-7; *see* ECF 20-2 ¶¶ 23-24 (Affidavit of Danniel Walburn).  According to CVR, both Mr. Poplin and Mr. Bonner "would be greatly and unduly burdened by having to appear in Georgia to testify at trial."  ECF 20 at 7.  CVR also contends that "former employees of CVR, all Maryland residents, likely have discoverable information, and may be called at trial." *Id.*  In CVR's view, each of these potential witnesses "would be significantly burdened in the event that this case is transferred to the State of Georgia."  *Id.*

In my view, this factor counsels against transferring the case to Georgia.  To be sure, employees of DSS will be inconvenienced if required to travel to Maryland.  But, employees of CVR will be equally inconvenienced if they must travel to Georgia.  This is an unavoidable consequence of geography.  What tips the balance towards maintaining the suit in Maryland is that CVR has identified at least two "disinterested, non-party witnesses" who live in Maryland (ECF 20 at 6-7), while DSS has only identified as witnesses persons who are high-ranking corporate officers of DSS.  As noted, the convenience of non-party witnesses is given additional weight as compared to the convenience of party witnesses.  *See* 15 Wright & Miller § 3851 p. 253.  Accordingly, the convenience of CVR's non-party witnesses favors maintaining this lawsuit in Maryland.

### 3.  Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer."  15 Wright & Miller § 3849 at 217.  Notably, "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other."  *Id*. at 216; *see Pinpoint IT Services, L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011) ("[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.").

DSS states, ECF 13 at 11: "It is far more convenient for DSS to have this lawsuit in the Northern District of Georgia."  In support of its position, DSS reiterates that its two witnesses, Ms. Wang and Mr. King, both of whom are employed by DSS, live and work in Georgia.  *Id*. DSS also reiterates that it "has no affiliated individuals or offices in Maryland."  *Id*.

CVR asserts: "[T]he converse of all of [DSS's arguments] is true for CVR if the case is transferred to Georgia, as [CVR's] employees, witnesses, and documents are all in Maryland." ECF 20 at 7.  It states, *id.* at 8: "DSS's argument on this factor demonstrates, at most, that litigation in Maryland would be inconvenient for DSS. However, litigating in Georgia would be at least as inconvenient (if not more so) for CVR and plainly more so for all of the non-party witnesses."[3]

---

[3]  CVR also points out that "DSS was willing to litigate in Maryland when it perceived a benefit to doing so."  *Id*.  In support of this assertion, CVR submitted a letter from DSS's counsel in Baltimore, dated April 26, 2016.  ECF 20-3.  The letter indicates that DSS retained Maryland counsel to recover $44,135, allegedly due and owing to DSS from CVR.  *Id*.  CVR posits: "DSS intended—or at very least was willing—to sue CVR in Maryland."  ECF 20 at 8.  In Reply, DSS contends that the letter merely "suggested the option of filing suit if the debt went unpaid . . . ." ECF 23 at 7.  But, DSS insists that it "never willingly embarked on a lawsuit filed in Maryland, and it is improper for CVR to represent otherwise to the Court."  *Id*.

In my view, the convenience of the parties counsels against transfer.  As CVR notes, transferring the case from Maryland to the Northern District of Georgia would only serve to shift the inconvenience from DSS to CVR.  DSS does not allege that it would be easier for CVR to litigate the case in Georgia than it would be for DSS to litigate the case in Maryland.

### 4.  Interest of Justice

A final factor for the Court's consideration is whether transfer is in the interest of justice. This factor is "amorphous and somewhat subjective," and allows the court to "consider many things."  15 Wright and Miller § 3854 at 313-18.

In its Motion, defendant cites two primary bases as to why the interests of justice warrant the transfer of the case to the Northern District of Georgia.  *See* ECF 13 at 5-8.  They are: (1) that Georgia law would apply to the case and (2) that the finder of fact may need access to DSS's facilities in Georgia.  *Id*.

In diversity cases, federal courts apply the choice of law rules of the state in which the court sits.  *See, e.g.*, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 652-53 (4th Cir. 2010); *see also Prof'l Massage Training Cent., Inc. v. Accreditation Alliance of Career Schools and Colls.*, 781 F.3d 161, 180 (4th Cir. 2015); *Demetres v. E. W. Const. Inc.*, 776 F.3d 271, 273 (4th Cir. 2015).

Here, DSS argues that Maryland's choice of law doctrine would point towards the application of Georgia law.  ECF 13 at 5-6.  According to DSS, for contract claims, Maryland follows the *lex loci contractus* method of determining choice of law, which "applies the law of the jurisdiction where the last act necessary to form a contract was made."  *Id.* at 5 (citing *Aphena Pharma Solutions-MD LLC v. BioZone Laboratories, Inc.*, 912 F. Supp. 2d 309, 320 (D.

---

Based on my analysis, I need not consider this matter.

Md. 2012)). DSS asserts that, based on CVR's arguments, the last act necessary to form the Agreements occurred when Mark Blodgett, a Georgia resident, "purportedly signed the Agreements on behalf of DSS." ECF 13 at 6. As evidence that Blodgett signed the Agreements in Georgia, DSS cites that Blodgett's daughter, also a Georgia resident, was a witness to the signing of the Agreements and that the header on the top of each page of the Agreements shows that the Agreements were sent from a fax machine named "DSS" from DSS's fax line. *Id.*

In its Opposition, CVR argues that Maryland's substantive law may apply to the case because the last act to form the contract may have occurred in Maryland. ECF 20 at 9. First, it argues that that Danniel Walburn, CVR's "sole member," executed the Agreements in Maryland, and "crossed wires" with Blodgett. *Id.*; *see* ECF 20-2 ¶ 7. Alternatively, it claims "the agreement was formed orally prior to the execution of the Agreements and . . . the agreement was reached over the telephone, with one party in Maryland and the other (presumably) in Georgia." ECF 20 at 9-10; *see* ECF 20-2 ¶ 8. CVR insists: "It is thus unclear, at present, which State's substantive law would apply to the contract claims at issue." ECF 20 at 10.

In any event, CVR points out that the contract principles at issue here are "basic" and "well-established" and thus "there is no reason to believe that this Court cannot apply Georgia law . . . ." *Id.* In addition, CVR disputes that there is any "need to view, visit, or inspect any operations or facilities in the State of Georgia," particularly given that the products in issue are manufactured in China. *Id.*

In its Reply, DSS points out that CVR does not contend in its Complaint that it entered into oral agreements with DSS. ECF 23 at 4.

"Familiarity with applicable law is one of the interests of justice factors." *Aphena Pharma Solutions-MD LLC*, 912 F. Supp. 2d at 320 (citing *Dicken*, 862 F. Supp. at 93-94); *see*

*also* 15 Wright and Miller § 3854 at 353-54 ("In diversity of citizenship cases, in which state law

provides the substantive rules of decision, it is an advantage to have that law applied by federal

judges who are familiar with the governing state law.")  However, "[t]his consideration is given

'significantly less weight when the case involves basic or sufficiently well-established . . . issues

of state law or when there is no reason to believe that the applicable law of the forum differs

markedly from the law of the proposed transferee state.'"  *Topiwala v. Wessell*, WDQ-11-0543,

2012 WL 122411 at *8 (D. Md. Jan. 12, 2012) (quoting 15 Wright and Miller § 3854) (alteration

in *Topiwala*); *see also, e.g.*, *Snyder v. Bertucci's Restaurant Corp.*, No. 12-5382, 2012 WL

6601384 at *5 (E.D. Pa. Dec. 18 2012) ("Federal judges are frequently called upon to apply the

laws of other states, and basic tort law is not so complicated as to advocate heavily in favor of

transfer."); *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 178 (E.D.N.Y.

2003) ("New York contract law is not overly complex so as to unduly burden the South Carolina

court.").

      In my view, the choice of law issue does not favor transfer.  There is no indication that

Georgia contract law is complicated or markedly different from Maryland law.  *See Topiwala*,

2012 WL 122411 at *8.  Even assuming Georgia law applies, DSS has not suggested any reason

why this Court would be unequipped to apply basic Georgia contract law.

      DSS also contends that the interests of justice favor transfer because of the possibility

that its premises "might have to be viewed."  ECF 13 at 7.  According to DSS, ECF 13 at 7: "To

the extent that any premises is relevant to the issues at bar, it is DSS' warehouse in Alpharetta,

Georgia, where its inventory of axles is kept, and also DSS' office in Alpharetta, Georgia, where

operations occur and relevant documents and records are maintained."

CVR responds that "DSS's assertion that the fact-finder may need to 'ascertain a better understanding' of DSS's products or operations is pure conjecture absent a scintilla of factual support that such an 'understanding' will be necessary." ECF 20 at 10-11. Moreover, CVR contends that "the partnership's axles were inspected and tested at a facility in Jessup, Maryland," and thus if inspection is warranted, it would be in Maryland. ECF 20 at 11; *see* ECF 20-2 ¶ 20. In its Reply, DSS insists, ECF 23 at 5: "To adequately defend itself against this claim, DSS will be required to proffer documents and potentially open the doors of its office to the fact finder."

Various courts have found that access to premises, where required, favors transfer of venue. *See Dicken*, 862 F. Supp. at 93; *see also Union of Orthodox Jewish Congregations of Am. v. Brach's Confections, Inc.*, AMD-05-620, 2005 WL 1115222 at *1 (D. Md. May 11, 2005). But, the allegations do not concern the quality of the products or their storage. It seems most unlikely that a site visit would be necessary in either state.

As I see it, the interests of justice do not warrant a transfer of the case.

### III.    Conclusion

The balance of factors does not support transfer. Therefore, I shall DENY the Motion (ECF 13). An Order follows, consistent with this Memorandum.


Date:   November 10, 2016                          /s/
                                        Ellen L. Hollander
                                        United States District Judge